## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

RESTEM, LLC,

      Plaintiff,

v.

NEUVIAN LLC, a Florida Limited
Liability Corporation; JACOB
MIGUEL, an individual; and
SPENCER BOUHADIR, an
individual,

      Defendants.

**CIVIL ACTION NO.:**

**COMPLAINT FOR:**
**(1) Misappropriation under the
DTSA**
**(2) Misappropriation under the
FUTSA**
**(3) Correction of Inventorship**
**(4) Declaratory Judgment of
Patent Ownership**
**(5) Violations of the Lanham Act,
15 U.S.C. § 1125**

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff RESTEM, LLC ("RESTEM" or "Plaintiff"), for its Complaint and demand for a jury trial, hereby complains of Defendants Neuvian LLC ("Neuvian"); Jacob Miguel ("Miguel"); and Spencer Bouhadir ("Bouhadir," collectively with Neuvian and Miguel, "Defendants"), and alleges as follows:

### I.  THE PARTIES

    1.    Plaintiff RESTEM is a limited liability company organized under the laws of Delaware with its principal place of business in Miami, Florida.

    2.    On information and belief, Defendant Neuvian is a limited liability company organized under the laws of the state of Florida, having a principal place of business at St. Petersburg, Florida.

1

3.     On information and belief, Defendant Miguel is an individual residing in Miami-Dade County, Florida.  On information and belief, Miguel is currently an owner of Neuvian.

4.     On information and belief, Defendant Bouhadir is an individual residing in Palm Beach County, Florida.

## II. JURISDICTION AND VENUE

5.     This civil action includes claims for correction of inventorship of certain United States patents arising under the patent laws of the United States, more particularly 35 U.S.C. § 256. This Complaint further alleges trade secret misappropriation under, *inter alia*, 18 U.S.C. §§ 1831 *et seq.*, and seeks a declaration of ownership of certain patents and patent applications.  It further alleges violations of the Lanham Act, 15 U.S.C. § 1125 *et seq.*

6.     This Court has subject matter jurisdiction over claims 1, 3–4, and 5 pursuant to at least 28 U.S.C. §§ 1331 and 1338(a), and has at least supplemental jurisdiction over claim 2 pursuant to at least 28 U.S.C. § 1367(a), including because, as alleged in more detail below, they are sufficiently related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.     On information and belief, Defendant Neuvian is organized under the laws of Florida and has its principal place of business in St. Petersburg, Florida.  On information and belief, Defendant Miguel resides in Miami-Dade County Florida.  On information and belief, Defendant Bouhadir resides in Palm

Beach County Florida.   Defendants are therefore each subject to personal jurisdiction in Florida, and each of the Defendants has committed the acts complained of in this Judicial District.

8.     Venue is proper in the Southern District of Florida because Defendants each committed acts of misappropriation and false and misleading statements in this Judicial District.  Inventive contributions to the patents and patent applications as to which RESTEM seeks correction of inventorship and/or declarations of ownership of patents and/or trademarks also took place in this Judicial District.  Thus, venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.  In addition, on information and belief, Defendant Miguel resides in Miami-Dade County Florida and Defendant Bouhadir resides in Palm Beach County Florida.  Thus, venue is also proper pursuant to 28 U.S.C. § 1391(b) because a Defendant resides in this Judicial District and all Defendants are residents of the state of Florida.

9.     All conditions precedent to the bringing of this action have been satisfied, excused, performed or waived.

### III.   STATEMENT OF THE CASE

10.    This action seeks relief for the theft of RESTEM's highly confidential information and trade secrets, correction of inventorship, a declaration as to ownership of patents assigned to or filed by Neuvian on subject matter that belongs to RESTEM, and relief for false and misleading statements related to

those patents and certain goods.  As a result of Defendants' improper actions as alleged in this Complaint, Plaintiff RESTEM and its business operations have suffered millions of dollars harm to its business operations and development activities, and RESTEM accordingly seeks relief as set forth below.

## IV.   FACTUAL BACKGROUND

11.    Plaintiff RESTEM is a leading clinical-stage biopharmaceutical company focused on the discovery and development of patient-specific, as well as off-the-shelf and ready-to-use, next-generation cell therapies that are designed to activate and enhance a patient's own immune system.  RESTEM's therapies are designed to enable the treatment of a broad range of disabling diseases that improve patient outcomes, as well as overall health and wellness for patients around the world.

12.    RESTEM's patented therapy platform technology consists primarily of three programs:   RESTEM's umbilical cord lining stem cells ("ULSCs"), RESTEM's umbilical cord lining stem cells derived exosomes ("ULSC-Xs"), and RESTEM's natural killer cell ("NK") therapeutics. RESTEM is also developing next-generation cell therapy derivatives based on these platforms.

13.    One of RESTEM's more recent innovations has come in the field of vaginal care and health.  Specifically, as women age, their vaginal health tends to decline.  This decline is often present in the form of pH imbalance and related issues such as estrogen levels and sensitivity, with these issues particularly present for post-menopausal women.  Genitourinary syndrome of menopause

("GSM") is the broad term for vulvovaginal atrophy, atrophic vaginitis, or urogenital atrophy due to a lack of estrogen production that occur with aging.

14.     Targeting pre-, peri- and postmenopausal vaginal issues is achievable with the correct combination of natural supplements.  At minimum, targeting sensation and imbalanced pH improves the quality of life for those women suffering from GSM.  RESTEM undertook research efforts for the conception, development, and reduction to practice of products and treatments to address these issues.

15.     Dr. Rafael Gonzalez, PhD. ("Dr. Gonzalez"), is the chief development and scientific officer at RESTEM and led RESTEM's research efforts for the treatment of GSM.  On behalf of RESTEM, Dr. Gonzalez led confidential and proprietary research and development efforts that led to the successful creation of a GSM treatment (the "GSM Product").  Dr. Gonzalez invented the formulation for the GSM Product.

16.     RESTEM worked with a company, Eternus Biosciences, LLC ("Eternus"), in connection with the distribution of products including but not limited to skincare products under the product name "JuveXO."  Eternus's owners for at least a portion of the time of these distribution efforts were Miguel (through a separate company, Cellexo, LLC), and Brian Pla (Eternus's CEO and Founder).  Miguel is no longer an owner of Eternus—on or about March 17, 2023, Miguel (through Cellexo, LLC) entered into a "Membership Interest Purchase

Agreement" under which Miguel sold his Eternus ownership interest to Semper Iuvenis LLC (of which Mr. Pla was the Manager).

17.     RESTEM also worked with Eternus on the possible distribution of the GSM Product.  Eternus and Miguel received through, among other means, conversations, written correspondence, and email correspondences, and scientific descriptions and summaries, valuable and proprietary information from RESTEM about the GSM Product in connection with this work, including but not limited to trade secrets, information about manufacturing processes, information about product testing, and other confidential business information (collectively, the "Confidential Information").  This Confidential Information was disclosed to Eternus and Miguel solely for the purpose of the business relationship and facilitating the distribution of the GSM Product, and with the clear understanding and agreement that such information was to be treated as confidential.  The Confidential Information was not otherwise owned by or licensed to Eternus or Miguel.

18.     Miguel, through his work at Eternus, was entrusted with this Confidential Information with the expectation that Miguel would not disclose or use it for any purpose other than as necessary to perform its obligations under the distribution arrangement.  By virtue of the nature of the information shared and the relationship between the parties, Miguel was aware that he had a duty to maintain the confidentiality of RESTEM's product and trade secret information.

19.     RESTEM relied on Miguel's commitment to uphold the confidentiality of the information provided and took reasonable steps to ensure that Miguel was aware of the proprietary and sensitive nature of the Confidential Information.  Despite this understanding, Miguel, through and in coordination with Neuvian and Bouhadir, has wrongfully disclosed, misused, and otherwise violated the confidentiality of RESTEM's Confidential Information, and has otherwise misappropriated said Confidential Information from RESTEM.

### THE DISPUTED PATENT

20.     Spencer Bouhadir and Jacob Miguel are named inventors on U.S. Patent No. 11,878,036 (the "'036 Patent"), filed on May 22, 2023, issued on January 23, 2024, and assigned to Neuvian.

21.     Spencer Bouhadir and Jacob Miguel are named inventors on International Application No. PCT/US2023/023086, filed on May 22, 2023, published on November 20, 2023, with Neuvian as the sole named applicant.

### FIRST CLAIM FOR RELIEF

### (TRADE SECRET MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. §§ 1836 *et seq.*)

### (Against All Defendants)

22.     RESTEM hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 21 as though fully set forth herein.

23. Defendants' conduct constitutes one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*.

24. RESTEM owns the Confidential Information.  In addition, RESTEM's Confidential Information is currently or was, at least at the time of Defendants' misappropriation, not generally known to the public or to other persons who can obtain economic value from its disclosure or use.  All individuals with access to RESTEM's Confidential Information were instructed to keep it confidential, and they were subject to obligations to keep RESTEM's Confidential Information secret. For example, RESTEM's efforts included instructing individuals with access to the information to treat it as confidential, restricting access to the information, and requiring individuals and/or companies to enter into confidentiality agreements with RESTEM and/or its subsidiaries in order to receive RESTEM's Confidential Information.

25. The Confidential Information constitutes trade secrets under 18 U.S.C. §§ 1839(3)(a)–(b) because RESTEM derives independent economic value from its not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.  The actual and potential independent economic value of RESTEM's Confidential Information is derived from not being generally known because it gives or gave RESTEM an actual and potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.  If others obtained

access to RESTEM's Confidential Information, they could use the information to deprive RESTEM of the business advantage it has over others, as well as to themselves obtain a business advantage over others.

26.     Further,     the     Confidential     Information     misappropriated     by Defendants is a trade secret because, as alleged above, RESTEM has maintained and enforced stringent security measures to maintain its confidentiality and has made reasonable efforts under the circumstances to keep RESTEM's Confidential Information from becoming generally known. For example, RESTEM's efforts included instructing individuals with access to the information to treat it as confidential, restricting access to the information, and requiring individuals and/or companies to enter into confidentiality agreements with RESTEM and/or its subsidiaries in order to receive RESTEM's Confidential Information.

27.     RESTEM is informed and believes, and thereon alleges, that without RESTEM's consent and in violation of RESTEM's rights, Defendants misappropriated RESTEM's Confidential Information and trade secrets through the improper means alleged herein.  RESTEM is informed and believes that Defendants misappropriated RESTEM's Confidential Information by acquisition at least from Miguel through Miguel's ownership of and work with Eternus.

28.     For example, upon information and belief, Miguel, without RESTEM's consent, disclosed to and otherwise used RESTEM's Confidential Information with Neuvian and Bouhadir in furtherance of the application for the '036 Patent.  At the time of disclosure and use, Miguel knew, or had reason to

know, that his knowledge of RESTEM's Confidential Information was acquired by means under which a duty existed for them to keep RESTEM's Confidential Information secret.  This duty arose from obligations both expressly stated and implied by RESTEM to keep RESTEM's Confidential Information secret.  Defendant Miguel also knew, or had reason to know, that disclosing and otherwise using RESTEM's Confidential Information constituted a breach of those obligations.

29.    At the time of acquisition, Neuvian and Bouhadir also knew, or had reason to know, that Miguel obtained RESTEM's Confidential Information pursuant to a duty or obligation, both expressly stated and implied, to keep RESTEM's Confidential Information secret.  For example, Neuvian and Bouhadir knew of Miguel's former relationship with RESTEM through Eternus and Miguel's corresponding duties, obligations, and general understanding to keep the Confidential Information secret and confidential.  Neuvian and Bouhadir knew Miguel was under a duty to maintain the secrecy of the information they obtained from RESTEM.  Neuvian and Bouhadir knew RESTEM considered the information confidential by virtue of Miguel's prior relationship with RESTEM.

30.    Nevertheless, on information and belief, Defendants Miguel, Bouhadir, and Neuvian used and/or disclosed RESTEM's Confidential Information for their own benefit of Defendants.  On information and belief, this includes, but is not limited to, Defendants' efforts in connection with Neuvian's ultimately successful patent application that improperly used RESTEM's

Confidential Information, Defendants' improper use and plagiarizing of Confidential Information to misappropriate the Confidential Information, as well as Defendants' efforts to commercialize RESTEM's Confidential Information.

31.   On information and belief, Defendants used and disclosed RESTEM's Confidential Information it obtained from RESTEM without RESTEM's express or implied consent. On information and belief, Defendants used and disclosed RESTEM's Confidential Information at least by using it in connection with filing patent applications or otherwise using it in connection with commercialization efforts by Defendants and using RESTEM's business and sales strategies without RESTEM's express or implied consent.

32.   RESTEM had no way of knowing, or learning, of Defendants' improper use, or disclosure prior to on or about November 30, 2023.  Defendants did not publish RESTEM's Confidential Information in patent applications until after November 30, 2023, and RESTEM was not approached by Miguel about the purchase and sale of rights to the '036 Patent until in or around September 2024. Indeed, RESTEM had no reason to suspect or believe that Defendants had improperly used and disclosed RESTEM's Confidential Information until after being approached by Miguel about the purchase and sale of rights to the '036 Patent.

33.   RESTEM was harmed by Defendants' use and disclosure of RESTEM's Confidential Information, and Defendants' actions were substantial factors in causing RESTEM's harm. As a direct and proximate result of

Defendants' willful, improper, and unlawful acquisition, use, and disclosure of RESTEM's trade secrets, RESTEM has suffered, and will continue to suffer, great harm and damage.

34.    Defendants were unjustly enriched by Defendants' use and disclosure of RESTEM's Confidential Information, and Defendants' actions were substantial factors in causing Defendants to be unjustly enriched.  Defendants were unjustly enriched because its misappropriation of RESTEM's Confidential Information caused Defendants to receive a benefit that they otherwise would not have achieved.

35.    As the direct and proximate result of Defendants' conduct, RESTEM has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant exposure and damages, in an amount to be proven at trial.

36.    As a result, RESTEM seeks damages for actual loss caused by the misappropriation of the trade secrets, damages for any unjust enrichment caused by the misappropriation of the Confidential Information and trade secrets, and the gains, profits, advantages, and unjust enrichment that Defendants' have obtained as a result of Defendants' wrongful acts, in an amount to be proven at trial, as well as whatever other relief the Court deems just and proper.

37.    If Defendants are not enjoined, they will continue to misappropriate and use RESTEM's Confidential Information and trade secrets for Defendants'

own benefit and to RESTEM's detriment. RESTEM is thus entitled to damages and an injunction as set forth in 18 U.S.C. § 1836(b)(3).

38.     Additionally, Defendants' conduct as described herein, was willful, malicious and wanton, and undertaken for the purpose of causing injury to RESTEM. As a result, RESTEM seeks exemplary damages up to two times the amount of RESTEM's actual damages and Defendants' unjust enrichment.

## SECOND CLAIM FOR RELIEF

## (TRADE SECRET MISAPPROPRIATION UNDER THE FLORIDA UNIFORM TRADE SECRETS ACT)

## (Against All Defendants)

39.     RESTEM hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 21 as though fully set forth herein.

40.     This is a claim for Misappropriation of Trade Secrets under Florida's Uniform Trade Secrets Act, codified in Florida Statutes Chapter 688, based on Defendants' wrongful and improper acquisition, use, and disclosure of the Confidential Information and proprietary trade secret information of RESTEM.

41.     Defendants' conduct, as set forth in the paragraphs above, constitutes one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Florida's Uniform Trade Secrets Act.

42.     As set forth in the paragraphs above, RESTEM owns the Confidential Information which, as alleged above, has been used and/or disclosed by Defendants without permission.   In addition, RESTEM's Confidential

Information is currently or was, at least at the time of Defendants' misappropriation, not generally known to the public or to other persons who can obtain economic value from its disclosure or use.

43.    As set forth in the paragraphs above, RESTEM made reasonable efforts under the circumstances to keep RESTEM's Confidential Information from becoming generally known. For example, RESTEM's efforts included instructing individuals with access to the information to treat it as confidential, restricting access to the information, and requiring individuals and/or companies to enter into confidentiality agreements with RESTEM and/or its subsidiaries in order to receive RESTEM's Confidential Information. RESTEM's Confidential Information accordingly constitutes a "trade secret" pursuant to Florida Statutes § 688.002(4).

44.    Without RESTEM's consent and in violation of RESTEM's rights, Defendants misappropriated RESTEM's Confidential Information and trade secrets through the improper means alleged herein.  RESTEM is informed and believes that Defendants misappropriated RESTEM's Confidential Information by acquisition at least from Miguel through Miguel's ownership of and work with Eternus.

45.    For example, upon information and belief, Miguel, without RESTEM's consent, disclosed to and otherwise used RESTEM's Confidential Information with Neuvian and Bouhadir in furtherance of the application for the '036 Patent.  At the time of disclosure and use, Miguel knew, or had reason to

know, that his knowledge of RESTEM's Confidential Information was acquired by means under which a duty existed for them to keep RESTEM's Confidential Information secret.  This duty arose from obligations both expressly stated and implied by RESTEM to keep RESTEM's Confidential Information secret. Defendant Miguel also knew, or had reason to know, that disclosing and otherwise using RESTEM's Confidential Information constituted a breach of those obligations.

46.    At the time of acquisition, Neuvian and Bouhadir also knew, or had reason to know, that Miguel obtained RESTEM's Confidential Information pursuant to a duty or obligation, both expressly stated and implied, to keep RESTEM's Confidential Information secret.  For example, Neuvian and Bouhadir knew of Miguel's former relationship with RESTEM through Eternus and Miguel's corresponding duties, obligations, and general understanding to keep the Confidential Information secret and confidential.  Neuvian and Bouhadir knew Miguel was under a duty to maintain the secrecy of the information they obtained from RESTEM.  Neuvian and Bouhadir knew RESTEM considered the information confidential by virtue of Miguel's prior relationship with RESTEM.

47.    Nevertheless, on information and belief, Defendants Miguel, Bouhadir, and Neuvian used and/or disclosed RESTEM's Confidential Information for their own benefit of Defendants.  On information and belief, this includes, but is not limited to, Defendants' efforts in connection with Neuvian's ultimately successful patent application that improperly used RESTEM's

Confidential Information, Defendants' improper use and plagiarizing of Confidential Information to misappropriate the Confidential Information, as well as Defendants' efforts to commercialize RESTEM's Confidential Information.

48.   On information and belief, Defendants used and disclosed RESTEM's Confidential Information it obtained from RESTEM without RESTEM's express or implied consent. On information and belief, Defendants used and disclosed RESTEM's Confidential Information at least by using it in connection with filing patent applications or otherwise using it in connection with commercialization efforts by Defendants and using RESTEM's business and sales strategies without RESTEM's express or implied consent.

49.   RESTEM had no way of knowing, or learning, of Defendants' improper use, or disclosure prior to on or about November 30, 2023. Defendants did not publish RESTEM's Confidential Information in patent applications until after November 30, 2023, and RESTEM was not approached by Miguel about the purchase and sale of rights to the '036 Patent until in or around September 2024. Indeed, RESTEM had no reason to suspect or believe that Defendants had improperly used and disclosed RESTEM's Confidential Information until after being approached by Miguel about the purchase and sale of rights to the '036 Patent.

50.   As the direct and proximate result of Defendants' conduct, RESTEM has suffered and, if Defendants' conduct is not stopped, will continue to suffer,

severe competitive harm, irreparable injury, and significant exposure and damages, in an amount to be proven at trial.

51.    As a result, RESTEM seeks damages for actual loss caused by the misappropriation of the trade secrets, damages for any unjust enrichment caused by the misappropriation of the Confidential Information and trade secrets, and the gains, profits, advantages, and unjust enrichment that Defendants' have obtained as a result of Defendants' wrongful acts, in an amount to be proven at trial, as well as whatever other relief the Court deems just and proper.

52.    If Defendants are not enjoined, they will continue to misappropriate and use RESTEM's Confidential Information and trade secrets for Defendants' own benefit and to RESTEM's detriment. RESTEM is thus entitled to damages and an injunction as set forth in Florida Statutes § 688.003 and § 688.004.

53.    The aforementioned acts of Defendants were, and continue to be, willful and malicious, warranting an award of reasonable attorneys' fees and exemplary damages, as provided by Florida Statutes § 688.004 and § 688.005.

## THIRD CLAIM FOR RELIEF

## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 11,878,036)

## (Against All Defendants)

54.    RESTEM hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 21 as though fully set forth herein.

55.    Bouhadir and Miguel are named inventors of U.S. Patent No. 11,878,036, presently recorded as owned by Neuvian.

56.    The '036 Patent claims subject matter that Defendants obtained from discussions with, or jointly conceived with, RESTEM employees and personnel.

57.    For example, Claim 1 of the '036 Patent claims a vaginal care composition comprising ratios, by weight of the total composition, of mesenchymal stem sell ("MSC") derived exosomes, L-carnosine, and magnesium citrate.    Claim 8 similarly claims a method for improving vaginal health comprising administering to a subject in need thereof the vaginal care composition of Claim 1.

58.    Miguel obtained this subject matter from discussions with, or otherwise jointly conceived it with, Dr. Gonzalez.    On information and belief, neither Miguel nor Bouhadir possess the training or knowledge required to independently develop or invent the subject matter claimed in the '036 Patent. Accordingly, Dr. Gonzalez is at least a joint inventor, if not the sole inventor, of any patentable subject matter claimed in the '036 Patent and should have been named as an inventor on the '036 Patent.    RESTEM reserves the right to amend its allegations regarding the identity of the inventors of the '036 Patent as discovery occurs.

59.    Dr. Gonzalez made inventive contributions at least to independent Claims 1 and 8 as well as dependent Claims of the '036 Patent while he was employed with RESTEM.    RESTEM reserve the right to amend its allegations regarding the identity of the inventors of the '036 Patent as discovery occurs.

60.    In written assignments, Dr. Gonzalez agreed to assign and assigned to RESTEM all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at RESTEM, including ownership of all patents and patent applications claiming such subject matter.

61.    Those assignments vested in RESTEM all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that RESTEM is at least a joint owner of the '036 Patent and RESTEM has standing to seek correction of inventorship to perfect RESTEM's ownership interest in the '036 Patent.

62.    Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, RESTEM seeks an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '036 Patent by adding inventor Dr. Gonzalez as a named inventor.

## FOURTH CLAIM FOR RELIEF

## (DECLARATORY JUDGMENT OF OWNERSHIP OF

## US. PATENT NO. 11,878,036)

## (Against All Defendants)

63.    RESTEM hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 21 as though fully set forth herein.

64.    Spencer Bouhadir and Jacob Miguel are named inventors of U.S. Patent No. 11,878,036, presently recorded as owned by Neuvian.

65.   The '036 Patent claims subject matter that Defendants obtained from discussions with, or jointly conceived with, RESTEM employees and personnel.

66.   For example, Claim 1 of the '036 Patent claims a vaginal care composition comprising ratios, by weight of the total composition, of mesenchymal stem sell ("MSC") derived exosomes, L-carnosine, and magnesium citrate.   Claim 8 similarly claims a method for improving vaginal health comprising administering to a subject in need thereof the vaginal care composition of Claim 1.

67.   Miguel obtained this subject matter from discussions with, or otherwise jointly conceived it with, Dr. Gonzalez.  On information and belief, neither Miguel nor Bouhadir possess the training or knowledge required to independently develop or invent the subject matter claimed in the '036 Patent. Accordingly, Dr. Gonzalez is at least a joint inventor, if not the sole inventor, of any patentable subject matter claimed in the '036 Patent and should have been named as an inventor on the '036 Patent.

68.   Dr. Gonzalez made inventive contributions at least to independent Claims 1 and 8 as well as dependent Claims '036 Patent while he was employed with RESTEM.  RESTEM reserve the right to amend its allegations regarding the identity of the inventors of the '036 Patent as discovery occurs.

69.   In written assignments, Dr. Gonzalez agreed to assign and assigned to RESTEM all patentable subject matter (as well as all works of authorship,

developments, improvements, or trade secrets) conceived during their employment at RESTEM, including ownership of all patents and patent applications claiming such subject matter.

70.     Those assignments vested in RESTEM all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that RESTEM is at least a joint owner of the '036 Patent and RESTEM has standing to seek correction of inventorship to perfect RESTEM's ownership interest in the '036 Patent.

71.     Based on the forgoing, RESTEM seeks declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that RESTEM is at least a joint owner of the '036 Patent (or, to the extent it is determined that RESTEM employees invented all of the patentable subject matter claimed in the '036 Patent, that RESTEM is the exclusive owner).   RESTEM also seeks an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of RESTEM.

### FIFTH CLAIM FOR RELIEF

### (FALSE ADVERTISING UNDER THE LANHAM ACT,

### 15 U.S.C. § 1125(a))

### (Against All Defendants)

72.     RESTEM hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 21 as though fully set forth herein.

73.    This is a claim for damages and injunctive relief under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for false and misleading statements of fact regarding investments and patent inventorship, which have caused harm to RESTEM's business and competitive standing.

74.    On information and belief, Defendants have knowingly and intentionally misrepresented to third parties, including Plaintiff's partners, customers, and competitors in the marketplace, that they are the sole and rightful inventors of the GSM Product and the subject matter of the'036 Patent and that, as a result, purchasers should purchase goods and services from Defendants rather than Plaintiff.

75.    On information and belief, Defendants have used the misrepresentation of sole inventorship and patent ownership in their marketing, licensing negotiations, and other commercial activities to claim undue credit and to exclude RESTEM from its rightful share of recognition and financial benefits associated with the GSM Product and the '036 Patent.  This includes attempts by Defendants to sell, license, or otherwise market the rights to the '036 Patent to RESTEM's partners, competitors, and customers and efforts to sell investments in Defendants' business.

76.    On information and belief, Defendants' statements are likely to deceive, and have deceived, third parties into believing that they are the exclusive source of the GSM Product and the '036 Patent, causing harm to RESTEM's business and reputation, and Defendants' conduct has caused confusion among

third parties, including competitors, customers, and partners who have been misled into believing that Defendants were solely responsible for the invention of the GSM Product and the '036 Patent and that one or more of the Defendants own the '036 Patent.

77. RESTEM has suffered significant harm, including lost revenue, reputational damage, diminished goodwill, and exclusion from business opportunities, as a direct result of Defendants' false statements. Further, Defendants' actions were willful and deliberate, entitling RESTEM to enhanced damages and attorney's fees under the Lanham Act.

## PRAYER FOR RELIEF

WHEREFORE, RESTEM requests entry of judgment in its favor and against Defendant as follows:

### Claim 1

1. That Defendants be adjudged to have misappropriated RESTEM's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*, and that Defendants' acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

2. That Defendants be adjudged to have been unjustly enriched;

3. That RESTEM be awarded damages, including but not limited to lost profits, disgorgement from Defendants, and/or a reasonable royalty;

4.      That Defendants, their agents, servants, employees, and attorneys, and all those persons in active concert or participation with Defendants, be forthwith temporarily, preliminarily, and thereafter permanently required to return all of RESTEM's trade secrets and confidential information and enjoined from further using and disclosing to any third parties any of RESTEM's trade secrets and confidential information;

5.      That Defendants be enjoined from selling or offering to sell any product that includes or uses any of RESTEM's trade secrets;

6.      That Defendants be directed to file with this Court and to serve on RESTEM within thirty (30) days after the service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

7.      That Defendants be required to account to RESTEM for any and all gains, profits, and advantages derived by it, and all damages sustained by RESTEM, by reason of Defendants' acts complained herein;

8.      That RESTEM be awarded exemplary damages and reasonable attorneys' fees;

## **Claim 2**

9.      That Defendants be adjudged to have misappropriated RESTEM's trade secrets in violation of the Florida Uniform Trade Secrets Act, Florida Statutes Chapter 688, and that Defendants' acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

10.      That Defendants be adjudged to have been unjustly enriched;

11.      That RESTEM be awarded damages, including but not limited to lost profits, disgorgement from Defendants, and/or a reasonable royalty pursuant to Florida Statutes § 688.004;

12.      That Defendants, their agents, servants, employees, and attorneys, and all those persons in active concert or participation with Defendants, be forthwith temporarily, preliminarily, and thereafter permanently required to return all of RESTEM's trade secrets and confidential information and enjoined from further using and disclosing to any third parties any of RESTEM's trade secrets and confidential information;

13.      That Defendants be enjoined from selling or offering to sell any product that includes or uses any of RESTEM's trade secrets;

14.   That Defendants be directed to file with this Court and to serve on RESTEM within thirty (30) days after the service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

15.   That Defendants be required to account to RESTEM for any and all gains, profits, and advantages derived by it, and all damages sustained by RESTEM, by reason of Defendants' acts complained herein;

16.   That RESTEM be awarded exemplary damages and reasonable attorneys' fees;

## **Claim 3**

17.   That the U.S. Patent and Trademark Office be directed to correct the inventorship of the '036 Patent to add the correct inventors;

18.   That RESTEM be declared exclusive owner, or at least a joint owner, of the patents and patent applications that are based on RESTEM's developments, including the '036 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to that patent and that patent application, including but not limited to PCT applications and any foreign counterparts;

19.   An order directing Neuvian to correct the ownership interest of RESTEM or, in the alternative, the PTO to amend the PTO records to reflect the ownership interest of RESTEM;

## Claim 4

20.   That the PTO be directed to correct the inventorship of the '036 Patent to add the correct inventors;

21.   That RESTEM be declared exclusive owner, or at least a joint owner, of the patents and patent applications that are based on RESTEM's developments, including the '036 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to that patent and that patent application, including but not limited to PCT applications and any foreign counterparts;

22.   An order directing Neuvian to correct the ownership interest of RESTEM or, in the alternative, the PTO to amend the PTO records to reflect the ownership interest of RESTEM;

## Claim 5

23.   Judgment in favor of RESTEM and against Defendants for their violation of 15 U.S.C. § 1125(a);

24.   A permanent injunction enjoining Defendants, their agents, employees, and all persons acting in concert with them, from

making false or misleading statements about the inventorship of the GSM Product and the '036 Patent;

25.    Actual damages suffered as a result of Defendants' false and misleading statements, in an amount to be proven at trial;

26.    Defendants' profits obtained as a result of their false and misleading statements;

27.    Treble damages for Defendants' willful and deliberate conduct; and

28.    Reasonable attorney's fees and costs of this action.

## All Claims

29.    An order imposing a constructive trust for the benefit of RESTEM over: (1) any trade secrets Defendants obtained from RESTEM; (2) any profits, revenues, or other benefits obtained by Defendants as a result of any disclosure or use of trade secrets obtained from RESTEM or false or misleading statements made by Defendants concerning the GSM Product or the '036 Patent; and (3) the '036 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to that patent and that patent application, including but not limited to PCT applications and any foreign counterparts;

30.    An award of taxable costs; and

31.     That this Court award such other and further relief as this

Court may deem just.

## V. JURY DEMAND

RESTEM hereby demands trial by jury in this action on all issues so triable.


Respectfully submitted,

| | |
|---|---|
| */s/ Kenneth G. Parker* | Kevin Kaplan |
| Kenneth G. Parker | Florida Bar No. 933848 |
| California Bar No. 182911 | Coffey Burlington |
| David B. Clark | 2601 South Bayshore Drive |
| California Bar No. 275204 | Penthouse One |
| Haynes and Boone, LLP | Miami, FL 33133 |
| 600 Anton Blvd., Suite 700 | office: (305) 858-2900 |
| Costa Mesa, CA 92626 | fax: (305) 858-5661 |
| office: (994) 202-3000 | kkaplan@coffeyburlington.com |
| fax: (949) 202-3001 | |
| ken.parker@haynesboone.com | |
| david.clark@haynesboone.com | |
| *Pro Hac Vice Applications to Be Filed* | |

**ATTORNEYS FOR RESTEM GROUP, INC.**